Michael **KELLEY**, Petitioner–Appellant,

v.

Stephen **KAISER** and Attorney General, Respondents–Appellees.

No. 92–6020.

United States Court of Appeals, Tenth Circuit.

May 17, 1993.

Michael G. Katz, Federal Public Defender, and Vicki Mandell–King, Asst. Federal Public Defender, Denver, CO (Michael Kelley also filed two briefs pro se), for petitioner-appellant.

Susan Brimer Loving, Atty. Gen. of Oklahoma, and Jennifer B. Miller, Asst. Atty. Gen., Oklahoma City, OK, for respondent-appellee.

Before LOGAN and SEYMOUR, Circuit Judges, and BROWN,* District Judge.

SEYMOUR, Circuit Judge.

Michael Kelley, a pro se prisoner, brought this petition for habeas corpus relief under 28 U.S.C. § 2254 (1988) challenging his 1978 conviction in Oklahoma state court for robbery with firearms after a former felony conviction, for which he was sentenced to thirty-five years imprisonment. Mr. Kelley, who pled guilty to the above charge, asserts that his sentence was improperly enhanced by a prior 1965 conviction because he was unconstitutionally treated as an adult in the earlier proceeding.[1] The district court denied relief, ruling that Mr. Kelley had failed to satisfy a state court requirement obligating him to make an initial showing in order to challenge his previous treatment as an adult. On appeal, we ordered counsel appointed for Mr. Kelley and directed the parties to address whether the state court requirement impermissibly burdens Mr. Kelley's constitutional right to procedural due process.[2] For the reasons set out below, we grant relief.

## I.

Mr. Kelley was seventeen years old when he was tried as an adult and convicted of marijuana possession in 1965. Under the Oklahoma juvenile code provisions in effect at that time, males of sixteen and seventeen were prosecuted as adults, while females of the same age were treated under the juvenile code unless certified to stand trial as adults.[3]

In *Lamb v. Brown*, 456 F.2d 18 (10th Cir.1972), we held that this statutorily mandated sex-based discrimination violated the Equal Protection Clause, and in *Radcliff v.*

*Anderson*, 509 F.2d 1093 (10th Cir.), *cert. denied*, 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975), we held that our decision in *Lamb* was to apply retroactively. In *Bromley v. Crisp*, 561 F.2d 1351 (10th Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978), we considered the procedures by which to determine the proper relief when a conviction is challenged under *Lamb*. We concluded, citing *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), that the conviction need not be set aside if it is established that the juvenile court would have certified the petitioner for treatment as an adult. *Bromley*, 561 F.2d at 1356–57. Our ruling in *Bromley* was premised on the holding of an evidentiary hearing, either in state or federal court, to determine whether a particular adult certification would have been made in juvenile court. In *Bromley*, the hearing occurred in federal court. We held, however, that

"where such a determination has not been made but is necessary to dispose of a federal habeas petition, we feel it preferable that the district court withhold judgment for a reasonable time to permit the determination to be made in the State courts. If the State obtains in the Oklahoma courts a determination that certification would have occurred, then on a showing of such determination, the federal district court should deny the writ; if the State court finding is otherwise, the writ should issue. Further, failing a State court ruling as to whether petitioner would have been certified, then the federal district court may have the hearing and make the ruling as to whether or not the court is clearly convinced that the petitioner would

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

1. In addition, Mr. Kelley alleges that his counsel was incompetent in advising him to plead guilty without challenging the validity of the prior conviction. In view of our conclusion that Mr. Kelley is entitled to habeas corpus relief on his challenge to enhancement based on the 1965 conviction, we need not address the incompetency of counsel claim.

2. We grant Mr. Kelley's motion for a certificate of probable cause and his motion for leave to proceed in forma pauperis.

3. The relevant statute defined delinquent child as "any male child under the age of sixteen years and any female child under the age of eighteen years who violates any law of the United States, or of this State." Okla.Stat. tit. 10, § 101 (1961). Oklahoma law further provided that the juvenile court could retain jurisdiction over a delinquent child who committed a crime for treatment within the juvenile justice system, or certify the child for trial as an adult. See Okla.Stat. tit. 20, § 776 (1961).

have been certified for trial as an adult, and then make proper disposition.

We recognize the fact that the determinations whether certifications would have been made will, in some of these cases decided today, relate to circumstances a few or quite a number of years back. However, *the burden of proof and persuasion will rest on the State. The court can take into account all doubts that arise, and any weakness of proof, because of the passage of time as factors against the State. This will afford substantial protection to the petitioners* from the fact that the determinations will concern circumstances in earlier years."

*Id.* at 1356 n. 6 (emphasis added) (citations omitted).

Our conclusion in *Bromley* that the certification issue be determined on an evidentiary hearing was derived from the Supreme Court's treatment of an analogous situation in *Kent*, 383 U.S. 541, 86 S.Ct. 1045. In that case, a juvenile subject to the exclusive jurisdiction of the District of Columbia juvenile court was apprehended and questioned concerning his involvement in serious offenses. The juvenile court subsequently waived jurisdiction and ordered the juvenile to stand trial as an adult under a statute allowing such a waiver after "full investigation." *Id.* at 547, 86 S.Ct. at 1050. However, the juvenile court did not hold a hearing, and did not confer with the juvenile, his parents, or his counsel. The court made no findings and gave no reasons.

The Supreme Court held that the juvenile court waiver of jurisdiction was procedurally defective as a matter of due process. The Court described as " 'critically important' [the] question whether a child will be deprived of the special protections and provisions of the Juvenile Court Act." *Kent*, 383 U.S. at 553, 86 S.Ct. at 1053. Accordingly, the Court concluded that

as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe

that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.

*Id.* at 557, 86 S.Ct. at 1055. The Court emphasized that "an opportunity for a hearing, which may be informal, must be given the child prior to entry of a waiver order," *id.* at 561, 86 S.Ct. at 1057, and that this hearing "must measure up to the essentials of due process and fair treatment." *Id.* at 562, 86 S.Ct. at 1057. The Court recognized that while the juvenile court has considerable latitude in the matter of waiver, this discretion nonetheless must be exercised with "procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness." *Id.* at 553, 86 S.Ct. at 1053. In addressing the issue of remedy, the Court stated that ordinarily it would direct a remand to the juvenile court for a procedurally adequate hearing. However, because the petitioner had passed the age at which the juvenile court could exercise jurisdiction over him, the Court remanded the case to the district court for a de novo hearing consistent with its opinion. The Court held that if the district court found waiver of juvenile court jurisdiction to have been inappropriate, the conviction must be vacated.

## II.

Subsequent to the decisions in *Bromley* and *Kent*, the Oklahoma Court of Criminal Appeals decided *Edwards v. State*, 591 P.2d 313 (Okla.Crim.App.1979). In *Edwards*, as in the instant case, the defendant was convicted of attempted robbery with firearms after former felony convictions which were subject to challenge under *Lamb*. At the time of the crime, the governing juvenile statute, Okla.Stat.Ann. tit. 10, § 1112(b), provided:

(b) If a child is charged with delinquency as a result of an offense which would be a crime if committed by an adult, *the court, after full investigation and preliminary hearing, may in its discretion continue the juvenile proceeding, or it may certify such child capable of knowing right from wrong and to be held accountable for his acts, for proper criminal proceedings to*

any other division of the court which would have trial jurisdiction of such offense if committed by an adult.[4]

*Id.* (emphasis added). In determining the nature of appropriate relief for a *Lamb* violation, the court recognized that under *Kent*, "a minor cannot be transferred out of the [juvenile] system without being afforded constitutional due process procedures including: a hearing, access by counsel to reports considered by the juvenile court in making the decision to transfer; and a statement of reasons for the juvenile court's decision to waive jurisdiction." *Edwards*, 591 P.2d at 319. The court also observed that "[t]he basic theory of the Juvenile Court system is based on a social welfare philosophy and contemplates compassionate rehabilitation rather than criminal sanctions for certain youthful offenders," *id.*, and "that *while a juvenile remains amenable to treatment the juvenile court cannot waive jurisdiction,*" *id.* at 320 (emphasis added).

In discussing the "substantive elements of amenability to treatment," *id.*, *Edwards* noted that substantive standards had been incorporated into the statute by the court in *Sherfield v. State*, 511 P.2d 598 (Okla.Crim.App.1973). In *Sherfield*, the

court was faced with a vagueness challenge to the same version of the adult certification statute as was applicable in *Edwards*. In upholding the statute against the charge that it was unconstitutionally vague, *Sherfield* supplemented the statutory language of section 1112(b) with the determinative factors set out in *Kent*. "There is some validity to the assertion that the statute is lacking in meaningful guidelines to govern waiver and certification.... In our view the standard presently found in § 1112 is sufficient to meet constitutional requirements, particularly if it is supplemented with the standards or determinative factors set out in the appendix of *Kent*."[5] *Id.* at 602. The guidelines were subsequently enacted as part of the statute. *See* Okla.Stat. tit. 10, § 1112(a), (b) (supp. 1977); *see also Edwards*, 591 P.2d at 320.

Thus, although the Oklahoma statute at the time of Mr. Kelley's 1965 conviction stated only that after an investigation the juvenile court could in its discretion certify as an adult a child "capable of knowing," *see* n. 4 *supra*, it is apparent from *Edwards* and *Sherfield* that knowing right from wrong was never the determinative factor in a certification decision but merely one necessary element.[6] Rather, the juvenile system envi-

---

**4.** The applicable statute in 1965, governing the present case, was virtually identical in relevant part, stating that the juvenile court, "after full investigation, may in its discretion retain jurisdiction or certify such child as a child capable of knowing, and to be held accountable for, his acts." Okla.Stat. tit. 20, § 776 (1961). The omission of a requirement for a "preliminary hearing" is irrelevant given *Kent*'s mandate that such a hearing be afforded to meet the test of due process.

**5.** The court in *Sherfield* set forth the relevant guidelines in an appendix to the opinion as follows:

The determinative factors which will be considered by the Judge in deciding whether the Juvenile Court's jurisdiction over such offenses will be waived are the following:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.
2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.
3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which conviction would be obtained.
5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with the crime.
6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.
7. The record and previous history of the juvenile, including previous contacts with law enforcements agencies, juvenile courts and other jurisdictions, or prior commitments to juvenile institutions.
8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use or procedures, services and facilities currently available to the Juvenile Court.

*Sherfield v. State*, 511 P.2d 598, 603 (Okla.Crim.App.1973) (Appendix).

**6.** The district court in the present case was incorrect, therefore, when it concluded that it was unnecessary for the state court to hold a hearing on Mr. Kelley's claim because he failed to con-

**1514**

sioned that the juvenile court would first determine whether a child was "amenable to treatment," *Edwards*, 591 P.2d at 320. Significantly, embodied in the juvenile court statutory scheme in 1965 was the presumption that children within the juvenile court jurisdiction would be accorded noncriminal treatment, and that certification for treatment as an adult was to be the exception rather than the rule. The legislation specifically provided that it was to "be liberally construed, to the end that its purpose may be carried out, to-wit: ... that, as far as practicable, any delinquent child shall be treated, *not as a criminal,* but as misdirected and misguided, and needing aid and encouragement." Okla.Stat. tit. 10, § 114 (1961) (emphasis added). *See also Edwards*, 591 P.2d at 317–18 (recognizing that "[t]he Juvenile Code is geared to the philosophy of protecting a child's right to full physical, mental, and moral development").

Notwithstanding *Edwards'* reliance on *Kent's* holding that certification requires a due process hearing, and *Edwards'* acknowledgment that certification is the exception rather than the rule,[7] the court held, in the context of a post-conviction proceeding to overturn a prior conviction, that "the appellant must be able to state ... some valid reason to believe that certification would have been denied. If he can do this then he will be entitled to an evidentiary hearing on the question." *Id.* at 321. Although the court recognized that the State bears the burden at the hearing to prove that certification would have occurred, *id.* at 322, it has subsequently ruled that "the State has no burden at all until after the issue is raised by a defendant and a reason is presented as to why certification would not have been granted," *Rackley v. State,* 814 P.2d 1048, 1050 (Okla.Crim.App.1991).

In the instant case, Mr. Kelley filed a petition in state court for post-conviction relief challenging the validity of his 1965 conviction under *Lamb.* He asserted that he would not have been certified as an adult in 1965 because the crime he was charged with, possession of marijuana, was a nonviolent one, and he had never previously been convicted of a crime although admittedly there was a charge then pending against him in Kansas. The state courts nevertheless denied relief without a hearing, ruling that Mr. Kelley had failed to present a valid reason for believing that certification would not have occurred. Mr. Kelley then sought federal habeas relief, asserting that the state court in *Edwards* improperly shifted to him the *burden to prove* that he would *not* have been certified to stand trial as an adult. Although the district court agreed that the law of this circuit, as set out in *Bromley,* places the burden of proof on the State, it nevertheless denied relief.[8] The district court believed that the state court's ruling, while imposing the *Edwards* requirement on Mr. Kelley, nonetheless amounted to a ruling by that court that Mr. Kelley would have been certified as an adult. The district court believed that under *Bromley* it was required to accept the state court's determination on this question.

**III.**

■ Whether a petitioner would have been certified by a juvenile court judge to stand trial as an adult is, of course, a fact question governed by the provisions of section 2254(d). Under that section, state court fact findings shall be presumed to be correct by a federal habeas court unless, *inter alia,* "the factfinding procedure employed by the State court was not adequate to afford a full and fair

tend he was not capable of knowing right from wrong. *Edwards* and *Sherfield* make clear that the juvenile court must consider all factors relevant to a defendant's amenability to treatment as a juvenile before certifying that he should instead be tried as an adult.

7. The court also noted that under the statutory scheme, "[t]he district court could not obtain jurisdiction to try a juvenile as an adult without a certification proceeding." *Edwards v. State,* 591 P.2d 313, 319 (Okla.Crim.App.1979).

8. Among other reasons, the district court stated its belief that Mr. Kelley had never asked for an evidentiary hearing. The pleadings are less than clear on this issue. Nonetheless, we point out that Mr. Kelley was at that time pro se, and that pro se pleadings are to be liberally construed. What is clear is that Mr. Kelley is challenging the validity of his 1965 conviction, and that under *Bromley* and *Kent* such a challenge envisions a hearing.

hearing." 28 U.S.C. § 2254(d)(2). Our holding in *Bromley,* which was decided before the state court in *Edwards* set out the requirement at issue here, assumed that any state court determination would be decided on the basis of an evidentiary hearing. We are now faced with the question whether the state court, by relying on *Edwards* to resolve the certification issue without such a hearing, has employed a constitutionally adequate fact-finding procedure.

We begin our consideration of this question by reiterating several observations which are critical to our analysis. As a preliminary matter, we point out that Mr. Kelley, who was tried as an adult under the discriminatory statutes in place in 1965, was denied his constitutional right to equal protection. The state court subsequently ruled in *Edwards* that males of Mr. Kelley's age in 1965 should have been treated as juveniles within the jurisdiction of the juvenile court. Consequently, Mr. Kelley was also denied the right recognized in *Kent* to a due process hearing before being required to stand trial as an adult. Moreover, under the juvenile court scheme in 1965, Mr. Kelley was entitled to a presumption that he would be treated as a child and not tried as an adult unless he was found not amenable to treatment. Finally, we explicitly held in *Bromley* that when a certification determination is made after-the-fact, "the burden of proof and persuasion will rest on the State. *The court can take into account all doubts that arise, and any weakness of proof, because of the passage of time as factors against the State.*" *Bromley,* 561 F.2d at 1357 n. 6 (emphasis added).

■ The *Edwards* requirement challenged here, under which a petitioner must make a preliminary showing in order to trigger his right to a due process hearing, inarguably flies in the face of the governing principles set out above. Requiring Mr. Kelley to make a showing that adult certification would *not* have occurred denies him the benefit of the statutory presumption, accorded to females his age, that he would be treated as a juvenile. Mr. Kelley was seventeen years old at the time of his 1965 conviction. Given the statutory presumption that juveniles

would be treated in the juvenile system, this fact alone is sufficient to make a prima facie showing that he would not have been certified as an adult. Having enacted an unconstitutional distinction between the treatment of males and females, the state can not as part of the remedy for the resulting unconstitutional conviction reincorporate a gender distinction making it more onerous for males than females to obtain the benefit of the juvenile court system.

■ Moreover, requiring Mr. Kelley to make an initial showing before he receives the hearing to which he is constitutionally entitled is to ignore the fact that the State has an affirmative obligation to provide that hearing. Having created the juvenile court system, under *Kent,* it is the State's decision to seek to treat a juvenile as an adult that, in and of itself triggers the need for a hearing. Finally, the *Edwards* requirement undeniably places the burden on a petitioner to show that he is entitled to a hearing, rather than requiring the State to establish that its unconstitutional failure to provide a hearing would not have changed the adult certification determination. While it is true that once a hearing is held the State bears the burden on the issue of certification, this fact is meaningless to a petitioner if the hearing never occurs. Whether the *Edwards* burden is viewed as a substantive requirement or as a pleading matter, under *Edwards* the State is never required to shoulder its burden of proof at a hearing until after a petitioner shoulders the burden of an initial showing. By requiring the petitioner to make an initial showing, the *Edwards* rule is contrary to *Bromley,* which holds that doubts and weaknesses in proof resulting from the passage of time will be weighed *against* the State. Requiring the petitioner to initially overcome such doubts and weaknesses impermissibly weighs these factors in the State's favor.

■ We emphasize that we are not interpreting a state statute *ab initio* but are instead addressing the appropriate remedy for a denial of equal protection. In this context, we are faced with a state court requirement that defeats a state statutory presumption favorable to the petitioner, that has the undeniable effect of impermissibly

requiring the petitioner to shoulder the initial burden of proof and, most importantly, that erects a significant barrier to a petitioner's ability to receive the due process hearing which the State has an affirmative constitutional obligation to provide under its statutory scheme. When a State has violated a petitioner's rights both to equal protection and to due process by trying him as an adult, the State bears a heavy burden to justify its imposition of an obstacle to the petitioner's ability to have a hearing after-the-fact. The court in *Edwards* articulated no reason for the requirement it imposed on petitioners. We conclude that the *Edwards* rule is an arbitrary and unjustified impediment to a petitioner's due process rights. Accordingly, we hold that when the state court denies a petitioner an evidentiary hearing as a result of the application of the *Edwards* requirement, the state factfinding procedure has not been adequate to afford a full and fair hearing on the certification issue. The state court's adult certification determination is therefore not entitled to a presumption of correctness when the petitioner seeks federal habeas corpus relief.

■ Given our holding that the federal district court erred in deferring to the state court's certification determination, we turn to the nature of the relief to which Mr. Kelley is entitled. We noted in *Bromley* that when neither the federal court nor the state courts have made a certification determination, the federal district court should preferably "withhold judgment for a reasonable time to permit the determination to be made in the State courts." 561 F.2d at 1356 n. 6. In the instant case, however, the state courts have already been provided an opportunity to address the issue and have resolved the question without providing Mr. Kelley with a full and fair hearing. Under these circumstances, we conclude that the proper procedure is to remand the case to the district court for the purpose of holding an evidentiary hearing in that court. *See White v. Sowders*, 644 F.2d 1177, 1184–85 (6th Cir.1980), *cert. denied*, 454 U.S. 853, 102 S.Ct. 299, 70 L.Ed.2d 146 (1981). The district court should assess the evidence in light of the factors set out in *Sherfield*, see n. 5 *supra*, in

determining whether Mr. Kelley would have been certified as an adult in 1965.

REVERSED and REMANDED for further proceedings in light of this opinion.